SMITH *against* DUDLEY.

ERROR *to Chicot Circuit Court.*

Where the record of the court below states that judgment had been rendered at a previous term in favor of plaintiff against defendant, for a certain amount, and that the records of said judgment had been lost or destroyed; and then proceeds thus: " It is therefore considered by the court, that the plaintiff have leave to re-instate his judgment on the record of this court, and that he have execution thereon for his debt, interest, and costs of suit;" this, though an *informal*, is clearly a *final* judgment.

It clearly concludes the matter in dispute between the parties, and the order for execution is a final decision. That being the case, a writ of error will lie to reach it.

Where a record is first shown, by proper evidence, to be lost or destroyed, it is competent to prove its existence by a sworn or authenticated copy.

But to warrant such evidence, the document must be *vetustate temporis aut judiciaria cognitione roborata.*

But in all the cases on this subject, the question arose incidentally on the trial, and in no instance did the lost record itself constitute the sole foundation or cause of the proceedings.

Without some legislative provision, this court would be exceedingly unwilling to declare, that a lost judicial record, which constituted the sole foundation or cause of action, could be proved or verified merely by *parol.*

Such a proposition can derive no support or countenance from the principles of the common law, and there is no statutory regulation in regard to the matter.

Every judgment or judicial proceeding, to be obligatory, must unquestionably show such a state of case as will give jurisdiction to the court that made the record, and conclusively prove that the party recovering had a good cause of action.

Should the record wholly fail to establish these facts, the defect is fatal, and cannot be amended in any stage of the proceedings.

Unless the jurisdiction be shown, and the cause of action proved, no legal presumption can attach in favor of the judgment below.

The moment the jurisdiction is properly shown, and a good cause of action well laid and proved, the judgment or other judicial proceeding draws to itself all the legal presumption in its favor, which of course stands until it is overthrown by other affirmative matter in the record.

The record in this case fails to show in what manner the lost judgment was proved or verified. It was not proven by the record, for that is shown to have been lost; and as no legal presumption can attach in favor of the judgment, until the court is shown to possess power to enter up such a judgment, it cannot be presumed that the lost or destroyed judgment was proved by an enrolled and properly authenticated copy.

There is no rule of law or practice, that will authorize a court to re-instate upon the rolls or record of its proceedings a final judgment which had been previously given, and enrolled at a former term of the same court, and which subsequently has been lost or destroyed.

Moreover, these proceedings are not only invalid, but absolutely void, because the record does not show that the defendant had any notice of the motion to re-instate the judgment.

It is a principle of natural justice, as well as of legal right, that no one can be bound by any judicial proceeding to which he is not a party; and he cannot be made a party unless an opportunity has been offered him of defending himself.

In the winter of 1838, a great portion of records, record-books, and papers of the Chicot Circuit Court, were stolen from the Clerk's office by some person unknown, and never recovered. At May term,

1839, in the case of Peter Dudley, executor of Isham Talbot, and assignee of Theobald & Bain, against Grandison C. Smith and others, an entry was made of record, to the following effect: That " the parties came by their attorneys, and it appearing to the satisfaction of the court, that a judgment was rendered in favor of the plaintiff against the defendants, at October term, 1838, for $8,000 debt, with interest from February 1, 1838, until paid, and costs of suit; and it further appearing to the satisfaction of the court, that the record of said judgment has been lost or destroyed: Therefore, it is considered by the court, that the plaintiff have leave to have his said judgment re-instated on the records of this court, and that he have execution therefor, for the debt, interest, and costs, aforesaid, and that the said defendants be in mercy, &c."

To this judgment the defendants sued out their writ of error.

At this term the plaintiffs in error moved for a supersedeas, and the defendant in error moved to dismiss, on the ground that no writ of error would lie, the decision of the court below not being a final judgment. The supersedeas was granted, and the case submitted. The cases of *A. W. Webb* v. *Benj. Estill*, and *White* v. *Hanger & Winston*, were precisely similar, and the same argument made and decision given as in this.

TRAPNALL & COCKE, for the plaintiffs in error:

If the Circuit Court had the right to replace a lost record, they should not only have *re-instated* the judgment, but the proceedings upon which that judgment was founded, the writ, declaration, &c., which are essential to the existence of the judgment itself, and without which, unless upon appearance and waiver, it is actually void.

In this case, the court and plaintiff seem to have considered the former judgment, although lost, still to have been *in esse*, and an order re-instating it upon the record, all that was necessary to give it efficacy, and accompanied the judgment in favor of the motion with an order that execution issue. By this proceeding, the defendant is precluded from an examination into the character and condition of the original judgment, and debarred all exception. Nor was he

Smith *against* Dudley.

notified of the plaintiff's motion, or given an opportunity of contesting the proof in support of it.    See 1 *Litt.* 27.

Lacy, *Judge,* delivered the opinion of the Court:

Before we proceed to examine the questions presented by the record, we will briefly notice an objection that was taken at the bar to the writ of error in this case.    It is said the writ will not lie, because there has been no final judgment given in the cause.    The facts as they appear on the record certainly do not warrant any such conclusion.    The entry contains the decision of the court, recites a former judgment which it shows to be final, and it states the exact amount of the debt, interest, and costs, due, and it then gives leave to re-instate the judgment on the records of the court, and finally it orders an execution to issue for the sum thus ascertained and computed.    This, though an informal, is nevertheless a final judgment, for it clearly concludes the matter in dispute between the parties.    When the entry was once made, and the term at which it had been enrolled had expired, and the court adjourned, it is certain that the defendant was for ever precluded from again agitating the matter.    Admitting it to be questionable, whether or not the first part of the entry of the court amounts in itself to an absolute judgment in the cause, still, however, it cannot be denied that the latter part of the order, which directs an execution to issue, is a final decision, and that being the case, a writ of error will well lie to reach it.    *Revised Statutes* 230, *section* 1. The assignment of errors presents two questions for our consideration and decision.    First, that the pleadings and proof in the cause, as appears from the face of the record, laid no valid foundation for the court below to pronounce any judgment whatever in the case.    Secondly, that the judgment attempted to be entered *quoad* the defendant below, was illegal and absolutely void, he having no notice of such proceeding, and being no party to the record.    Our first inquiry then is, in what manner can a lost judicial record, or one that has been destroyed, be proved or verified.

Blackstone defines a judicial record to be where the acts and judicial proceedings are enrolled on parchment or paper, for a perpetua memorial and testimony, which rolls are called the records of the

Smith *against* Dudley.

court, and are of such high and supereminent authority, that their truth is not to be questioned. For it is a settled rule and maxim of the common law, that nothing shall be averred against the record. 3 *Thomas' Coke Littleton* 485; 2 *Chitty's Blackstone* 264.

If the existence of the record is denied, it shall be tried by nothing but the record itself, that is, upon a bare inspection of the record, whether there be any such record or no; else there would be no end of disputes. For Sir Edward Coke observes, " a record or enrolment is a monument of so high a nature, and importeth in itself such absolute veriety, if it be pleaded there is no such record, it shall not receive any trial by witness, jury, or otherwise, but by itself." 6 *Co.* 53. If the question be as to the existence of a record of the same court, the trial shall be by the inspection of the record itself. When the record of an inferior court is disputed in a superior tribunal, to which is given jurisdiction to revise and correct the proceedings below, the trial is then by examination of the transcript or copy of the record that is sent up, to see whether it be properly authenticated or verified under the signature or seal of office, of the lawfully accredited agent who has the records in charge. 1*st Starkie* 188, 234; *Gilbert's Evidence* 45, 87; *Burk's executors* v. *Tregg's executors*, 2 *Wash. Rep.* 215; 1 *Starkie* 285; *Bacon's Abridgment, Evidence F.* A record may then be proved by mere production and inspection, or by a properly authenticated copy. As long as the record is supposed to be in existence, its production is indispensable, and its existence can alone be proved by inspection. If its existence be lost or destroyed, and that fact is established by competent evidence, then it may be proved by a regularly authenticated or sworn copy. The production and inspection of a record proves itself and the facts it contains, because it is a public judicial document, in which the law places an extraordinary degree of confidence, from the known credit and ingenuity of its lawfully appointed and constituted officers, in whose custody it is always supposed to remain. So long as a record is known to exist, it is the very best and highest evidence of itself, or of its contents, that can possibly be adduced. When its loss or destruction is satisfactorily established, there is a legal ground laid for the introduction of secondary evidence, which is never admissable, so long as

a higher grade of testimony is supposed to exist, or can be produced. The principle that the best evidence must be adduced which the nature of the case will admit of, is too familiar and important to be overlooked in any legal investigation. It lies at the very foundation of all the law on the subject of evidence, and in no instance can it be dispensed with.

In the case now under consideration, if the record had been first shown, by proper evidence, to be lost or destroyed, it was then competent to prove its existence by a sworn or an authenticated copy. But to warrant such evidence, it is said the document must be, accordant to the rule of the civil law, *vetustate temporis aut judiciaria cognitione roborata*, 1 *Stark.* 194. Upon this principle, it has been held, a copy of a decree may be given in evidence when the original is lost. So when it appeared that the records of the city of Bristol had been burnt, an exemplification of a recovery, under the town seal, was allowed in evidence. 1 *Mod.* 117; and in *Knight* v. *Dauler*, *Hard.* 323; 1 *Salk.* 285, it has been held that a record of a conviction which had been burnt, might be proved by estreats in the exchequer, and an inquisition of the recusant's lands found returned into the office. 1 *Stark.* 194; 1 *Vent.* 257; 2 *Starkie* 1129; 2 *Burr* 1072; 4 *T. R.* 514. In *Dillingham* v. *Snow et al.*, 5 *Mass.* 547; *Stockbridge* v. *West Stockbridge*, 12 *Mass.* 400, it is laid down that the facts which have become matter of record may be proved by secondary evidence after proof is given of the existence and loss of the record. In *Cook* v. *Wood*, 1st *McCord* 139, and in *Lyons* v. *Gregory*, 3 *Hen. & Mun.* 237, it has been held that the journals of the court might be read in evidence to prove the existence of the lost or destroyed record, when it was first satisfactorily established that the records of the court had been previously burnt, or so defaced by fire as to be no longer legible. It will be seen by reference to the cases here cited, that the question in regard to the proof of a lost record, arose incidentally on the trial, and in no one instance did the lost record itself constitute the sole foundation or cause of the proceeding. We have not been able to find in our researches any case of that sort, and in the total absence of all direct authority upon the point, we do not feel ourselves warranted in extending the doctrine, without the aid or assistance of some

legislative provision on the subject. Without some such provision or authority, given by the Legislature, we certainly would be exceedingly unwilling to take upon ourselves to decide that a lost judicial record, which constitutes the sole foundation of the proceeding or cause of action, could be proved or verified by parol. Such a proposition can derive no support or countenance from the principles of the common law, and surely cannot be said to have any statutory regulation in regard to the matter. This being the case, it necessarily follows, that a lost judicial record can only be proved or verified in the manner pointed out, and designated by the authorities quoted. We take the principle to be clear and well settled, that any judgment, or other judicial proceeding, to be obligatory, must unquestionably show such a state of case as will give jurisdiction to the court that made the record, and conclusively prove that the party recovering had a good cause of action. Should the record fail to establish these facts, the defects must be considered fatal in every stage of the proceedings. Unless the jurisdiction be shown, and the cause of action proved, no legal presumption can attach in favor of the judgment and opinion below; for if the court is not rightly invested with jurisdiction, it can pronounce no valid judgment in the cause; and the party having the recovery, is certainly not entitled to the benefit of it, unless he establishes a good cause of action.

The moment the jurisdiction is properly shown, and a good cause of action well laid, the judgment then draws to itself all the legal presumption in its favor, which of course stands, until overthrown by other affirmative matter in the record.

The application of these principles, will readily test the validity of the judgment and proceedings now under consideration. Upon the mere motion of the plaintiff's counsel, the Circuit Court ordered that leave be granted to him to re-instate his lost or destroyed judgment on the rolls or records of the court, and that an execution issue thereon, for debt, interest, and costs of suit. The record wholly fails to show how or in what manner the lost judgment, entered and enrolled at the previous term, was proved or verified. It certainly was not established by an inspection or production of the record itself, for the entry conclusively proves that the judgment had been lost and

9

destroyed; and of course it could not then have been produced or examined. Was it then proved by a regularly authenticated copy from the rolls?

If it was, the record fails to state that fact, or to exhibit the copy used upon the trial; and as no legal presumption can attach in favor of the judgment, until the court is shown to possess power to enter up such a judgment, therefore we cannot presume that the lost or destroyed judgment was proved by an enrolled and properly authenticated copy.

When a final judgment has once been pronounced in a cause, and the term at which it is given has finally expired, neither the court nor the parties to the record have any longer any power or control over it. It then becomes a public judicial record, carrying with it the seal and sanctity of truth, which cannot be impeached or set aside, except upon the ground of mistake or fraud. It may, however, be examined before a superior and higher tribunal, having jurisdiction of the case, when its errors, if any exist, may be corrected and reversed. We know of no rule of law or practice, that will authorize a court to re-instate upon the rolls a final judgment, which had been previously given and enrolled at a former term of the same court, and which subsequently has been lost or destroyed, and that, too, in a case where the lost judgment constitutes the sole foundation of the proceedings. The common law certainly authorizes no such summary proceeding, nor have we any legislative provision conferring any such power on the courts of record of this state. Besides, it is a legal solicism, in thought as well as in expression, to declare, that which is finally lost and destroyed can again be re-instated and brought to light. If these positions be true, then the Circuit Court unquestionably erred in pronouncing any judgment whatever in the cause. It is equally clear, that the judgment and proceedings in this case, *quoad* the defendants below, are not only invalid, but absolutely void. He had no notice of the pendency of the plaintiff's motion. The record does not show that he voluntarily came in, and made himself a party to the proceedings, or that he waived his right to the notice. The whole proceeding was ex parte, and there was no one present, except the court and plaintiffs in the action. It is a maxim of the common law,

Smith *against* Dudley.

that there can be no suit, unless there be three constituted parties: the actor, *reus judex*, that is, the plaintiff, who complains of the injury done; the defendant, who is called on to make reparation; and the judicial power, to examine the truth of the fact, and determine the law of the case. Another maxim of the common law is, that no one can be bound by any judicial proceeding to which he is not a party, and that he cannot be made a party, unless an opportunity has been offered of defending himself. In the present instance, the defendant below had no notice, either actual or constructive, of the pendency of the plaintiff's motion; and that being the case, as he did not voluntarily make himself a party to the proceeding, the judgment as to him is therefore null and void. The decision and judgment of the Circuit Court must therefore be reversed, with costs, and the cause remanded, to be proceeded in agreeably to the opinion here expressed.